# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DAWN M. CHAPPEL,

      Plaintiff,

    v.

MAGISTRATE DAVID M. HUNTER, et al.,

      Defendants.

Case No. 1:23-cv-728

Cole, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

On November 7, 2023, Plaintiff Dawn Chappel, proceeding pro se, filed an application seeking to initiate the above-captioned case *in forma pauperis*, or without payment of a filing fee. By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is now before the Court for a sua sponte review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

For the reasons that follow, the undersigned recommends that Plaintiff's complaint, as well as a separately tendered petition for writ of habeas corpus, be DISMISSED.[1]

---

[1]Plaintiff has attached multiple documents to her application to proceed *in forma pauperis* including: a motion to obtain electronic case filing rights, a motion to receive service by email, requests for Waiver of Service and USM-285 forms, and a "writ of habeas corpus." Consistent with this Report and Recommendation ("R&R"), all non-dispositive motions are denied as moot. Because it is dispositive, this R&R includes analysis of her petition for writ of habeas corpus.

## I.     The Screening Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327.

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

## II. Plaintiff's Prior Litigation

The undersigned takes judicial notice that Plaintiff previously filed a federal case involving the same state protective custody proceedings that form the basis of the above-captioned lawsuit. *See Chappel v. Adams County Children's Services*, *et al*., No. 1:22-cv-747-SJD-KLL In that case, Plaintiff sued Adams County Childrens' Services ("ACCS") and Ashlee Moore, a caseworker with ACCS. On initial screening, Magistrate Judge Karen Litkovitz filed a Report and Recommendation ("R&R") that recommended the *sua sponte* dismissal of Plaintiff's prior complaint with prejudice. In a Supplemental R&R, Magistrate Judge Litkovitz recommended the denial of Plaintiff's motion to amend her complaint. On May 19, 2023, U.S. District Judge Susan Dlott adopted the original

R&R as written and the Supplemental R&R with modification. The Court held that both Plaintiff's original claims and her proposed amended complaint were equally barred for lack of jurisdiction based on the *Rooker-Feldman* doctrine, and also were barred under *Younger* abstention to the extent that the child custody proceedings that formed the basis of Plaintiff's federal complaint remained ongoing in Adams County. *See Chappel v. Adams Cnty. Children's Services*, No. 22-cv-747, 2023 WL 4191724, *3-4 and n.8 (S.D. Ohio May 19, 2023); *see also id*., *7 n.12. In the alternative, the Court concluded that Plaintiff's proposed amended complaint failed to state any claim for relief against either ACCS or Moore.

### III.    Allegations of Current Complaint

Plaintiff's new complaint consists of 12 single-spaced neatly typed pages, followed by 223 pages of exhibits. Notably, Plaintiff's current complaint concerns the same Adams County Juvenile Court proceedings at issue in Plaintiff's prior lawsuit. Plaintiff alleges that she is the mother of two minor children, identified herein as "E.M" and "T.C." (Doc. 1-7, ¶1, PageID 38). Although her allegations are somewhat difficult to follow, they are additionally fleshed out in her exhibits.

Plaintiff generally alleges that E.M. and T.C. were wrongfully removed from her custody[2] by Adams County Juvenile Court in November 2022, that her civil rights were violated during the investigation and removal process, and subsequently through improper drug screening including multiple false positive tests. Plaintiff identifies as Defendants two state court judicial officers: Magistrate David Hunter and Adams County

---

[2]The record reflects that Adams County also removed the child(ren) from the father's custody and subjected him to drug screening. However, because Plaintiff alone brings this action, allegations regarding any other parent or guardian are omitted unless necessary for context.

Court of Common Pleas Judge Brett Spencer. As additional Defendants, Plaintiff names two public defenders, Tyler Cantrell and Sarah Shelton; Adams County guardian ad litem ("GAL") Mackenzie Carrington; the Adams County Board of Commissioners; and Shayla Tumbleson, a Peer Recovery Specialist at the Adams County Health Department. (*Id.*, ¶¶1-8, PageID 37-38).

Plaintiff alleges that on October 12, 2022, Adams County Children's Protective Services ("Agency")[3] visited Plaintiff's home during an investigation of a complaint of neglect of an infant born to a non-party identified as "A.C."[4] An exhibit attached to the complaint reflects that the Agency had temporary custody of A.C.'s four other children at the time, and was seeking permanent custody. Although Plaintiff denies that A.C. or her infant were living with her, social workers and the local police chief located them at Plaintiff's home, and immediately took the infant into custody. (*See id.*, PageID 63-64).

The Agency did not enter and inspect Plaintiff's home at that time. But a social worker filed a complaint the next day to investigate Plaintiff and the safety of her two minor children. Plaintiff alleges that caseworker Ashlee Moore[5] later visited her home on October 17 when Plaintiff was not home. On November 8, Plaintiff alleges that Ms. Moore filed a false complaint that lacked evidence of any immediate danger to the children. (*See, e.g.*, Doc. 1-7,¶5,  PageID 39; *see also id.*, PageID 56, 11/8/22 complaint requesting protective supervision and an order to allow the Agency to enter Plaintiff's home to conduct a safety review based on "concerns for the safety of the children due to the home

---

[3]Despite the minor difference in the name used by Plaintiff, the Agency identified in the current complaint appears to be the same entity previously identified by Plaintiff in her prior lawsuit.

[4]Plaintiff includes among the many exhibits attached to her complaint numerous documents related to "A.C.," who allegedly had substance use disorder/addiction issues, and other individuals who are not parties to this federal case. Plaintiff cites to the exhibits as evidence of past wrongdoing by the Adams County social workers and judicial officers regarding other juvenile court cases.

[5]Ms. Moore was a Defendant in Plaintiff's prior lawsuit, No. 1:22-cv-747-SJD-KLL.

being filthy, drug use occurring in the home and… non-compliance" with the Agency's repeated attempts to inspect the home).

On November 8, 2022, Magistrate Hunter signed an ex parte order granting the Agency "protective supervision of the minor children," and directing Plaintiff and others to permit the Agency "to access the residence where the child[ren) are located to ensure their safety." (*Id*., PageID 54, 58). Magistrate Hunter set a hearing for November 23, 2022. He appointed GAL Mackenzi Carrington to appear on behalf of Plaintiff's minor children, and appointed Public Defender Sarah Shelton to represent Plaintiff. The November 8 order directs Plaintiff to contact Ms. Shelton "within 72 hours of this hearing and submit an affidavit of indigency and a $25.00 application fee." (*Id*., PageID 60-61).

Plaintiff alleges that the Agency waited until November 14, 2022 before it removed her two children from her home through "coercion" by Ms. Moore, accompanied by Plaintiff's landlord and the local police chief. Plaintiff complains that the November 8 order shown to her at the time lacked indicia that it had been filed of record. (Doc. 1-7,  ¶7, PageID 39). Though the children were initially placed with a grandmother, they were later placed into foster care.

On November 23, 2022 Plaintiff appeared for the scheduled hearing. The state court's order recites that Plaintiff had not made contact with her appointed attorney prior to the hearing as required by the November 8 Order, and that drug screening that day reflected that "[b]oth parents tested positive…, Mother for methamphetamine and amphetamine and Father for Methamphetamine, amphetamine, and marijuana." (*Id*., PageID 69). The Order further states:

> Mother has a prior drug screen at ACCSB for methamphetamine and
> amphetamine which she contested and the results were confirmed by the

lab. Both parents disputed the results and denied use. After considering the behavior and demeanor of both parties at the hearing, the Court finds their denials lack credibility.

(*Id*.) The Court granted temporary custody to remain with Adams County and set a schedule for parental visitation and drug screening, with the next hearing date set for February 23, 2023. Judge Spencer adopted Magistrate Hunter's decision as the judgment of the Court.

On December 20, 2022, Attorney Shelton moved to withdraw from representation based on new employment with Clermont County. (*Id*., PageID 104). The Court appointed Public Defender Tyler Cantrell to represent Plaintiff in her place. (*Id*., PageID 105). Mr. Cantrell appeared with Plaintiff at a hearing held on February 23, 2023. Based on a finding that Plaintiff had failed to pass 5 substance abuse screens, the Court ordered temporary custody for the children to continue with Adams County. (*Id*., PageID 75).[6] Both parents continued to deny any substance abuse at the hearing. And in her complaint, Plaintiff generally disputes the drug screen results as improperly administered and/or as reflecting false positives. (*Id*., PageID 76).

Plaintiff sets forth seven separate causes of action against the various Defendants. In her first cause of action, Plaintiff alleges that the state court relied upon false evidence provided by the Agency and "may have … backdated" its November 8 order "to obscure a warrantless entry" on November 14, 2022 when it removed Plaintiff's children from her home. (Doc. 1-7, ¶11, PageID 39). This first cause of action sets forth

---

[6]Plaintiff has attached records that reflect that Plaintiff was negative on 12/12/22, but positive for methamphetamines on 12/16/11. She was negative on 12/30/22, but positive for methamphetamines again on 1/9/23. She was negative on 1/13/23, but positive on 1/17/23 for alcohol, amphetamines, MDMA, methamphetamine. On 1/27/23, she was positive again for methamphetamines. (*See* Doc. 1-7, PageID 76).

alternative theories of wrongdoing including a "conspiracy" in violation of "Section 1985":

> The actions of the defendants… appear to be either part of a broader conspiracy to impede, hinder, obstruct, or defeat the due course of justice…[in what] would be a direct violation of the Plaintiff's right to equal protection under the laws. Alternatively, they may involve document tampering to manipulate the evidence in the Plaintiff's case.

(Id., ¶ 13).

To support her first claim, Plaintiff points to exhibits that she alleges reflect "a pattern of non-compliance with reporting requirements" in other custody cases in Adams County. (*Id.*, ¶ 17). She alleges that in her own case, non-party caseworkers made "false" statements and illegally affixed Plaintiff's signature to a document "using some sort of editing device…." (*Id.*, ¶18). She alleges that the Court's statement in its November 23, 2022 order that a prior drug screen at ACCSB had been "confirmed by lab" was "a misrepresentation." (*Id.* ¶19, PageID 40-41). And she alleges that the court wrongfully "ignored" a motion in which Plaintiff sought to remove the case from Adams County Juvenile Court to this federal Court. (*Id.*, ¶20) She vaguely alleges that multiple defendants violated her "procedural due process rights." (*Id.*, ¶30, PageID 42).

In her second cause of action, Plaintiff alleges that the state court lacked jurisdiction to enter its "void" orders, because there was "no emergency or imminent circumstances present" concerning the children that would have required their removal on November 14, 2022. (*Id.*, ¶ 34, PageID 43).

In her third cause of action, Plaintiff alleges that she was denied her right to counsel and right to present evidence. Despite the fact that she was represented, Plaintiff alleges that neither Ms. Shelton nor Mr. Cantrell "sufficiently advocated for the Plaintiff's rights" or objected to the "wrongful restrictions imposed upon the Plaintiff" regarding drug

screens. (*See Id.*, ¶41-43, PageID 44). Plaintiff alleges that at the November 23, 2022 hearing, Magistrate Hunter "declined to review relevant documents" that Plaintiff submitted, instead giving them to Attorney Shelton, who failed to present them. When Ms. Shelton later withdrew, she allegedly took Plaintiff's evidence with her. (*Id.*, ¶ 37, PageID 43). Plaintiff also submits a photograph of Ms. Shelton with a CPS employee at a concert posted on social media, which Plaintiff argues "raises concerns about potential bias and conflicts of interest." (*Id.*, ¶ 42, citing PageID 103).

Plaintiff alleges that the appointment of Tyler Cantrell as replacement counsel continued to violate her rights. State court records reflect that on April 7, 2023, Attorney Cantrell initiated an eviction action against Plaintiff on behalf of Adams Metropolitan. *See* Case No. CVG2300162. On May 1, 2023, Plaintiff filed a motion with the state court alleging a conflict of interest based on the fact that Mr. Cantrell was "currently suing me in a separate case." (*Id.*, PageID 106). The state court promptly granted Plaintiff's motion for replacement counsel, and new Public Defender Anthony Baker appeared on Plaintiff's behalf at the hearing held on May 3, 2023. (*Id.*, PageID 71).

In her fourth cause of action, Plaintiff generally alleges that Defendants violated state law as well as her constitutional rights under the Fourth, Fifth and Fourteenth Amendments by using faulty drug screens and procedures. (*Id.*, ¶¶ 46-53, PageID 44-45).

In her fifth cause of action, Plaintiff alleges that Defendants "displayed a prejudiced attitude toward individuals with addition issues, which could have affected their ability to fairly adjudicate the Plaintiff's case." (*Id.*, ¶56, PageID 45). Plaintiff further alleges that "untrained individuals have been allowed" to perform drug tests and that:

> [C]ase documents suggest confirmation testing was done, but this is falsely reported. Proper procedures were not followed by the county. The plaintiff contends that the test results were also falsely reported during the 11/23/22 hearing. Ashlee Moore's response to Magistrate Hunter has been documented in the audio transcript

(*Id.*, ¶ 57, PageID 45).

In her sixth cause of action, Plaintiff alleges that the children's GAL demonstrated "negligence and failure to act in the best interest of the children" when she recommended "no contact" at the May 3, 2023 hearing "despite the plaintiff never having neglected or abused her children," and when she made the same recommendation on November 1, 2023. (*Id.*, ¶63). Plaintiff complains that the GAL did not take into account the children's desires and therefore breached her responsibilities and jeopardized Plaintiff's "right to family life." (*Id.*, ¶¶ 67-68, PageID 46-47).

In her seventh and final cause of action, (*see generally* ¶¶ 69-76. PageID 47), Plaintiff alleges that the Adams County Health Department allowed unlicensed individuals to conduct assessments and to hold substance abuse counseling sessions. Which "potentially" violates Plaintiff's due process rights. Plaintiff alleges that a new assessment was conducted on May 31, 2023 by Defendant Shayla Tumbleson, who also supervised relapse prevention sessions every two weeks. On September 27 during a relapse prevention session, Ms. Tumbleson explained the process for conducting random drug tests at the health department. However, on October 3, 2023, Ms. Tumbleson allegedly insisted on Plaintiff submitting to a drug test elsewhere. Plaintiff was "[u]ncomfortable" with the specified location and instead went to a health department appointment. Plaintiff alleges that Defendant Tumbleson then cancelled the October 4 relapse prevention appointment and "falsely marked the plaintiff as missing"

her October 3 appointment. Plaintiff also allegedly discovered "discrepancies in insurance billing" including charges for services under a provider's name that Plaintiff has never seen. Plaintiff alleges that she discovered that Defendant Tumbleson used the name of another provider and lacks the proper license to perform drug assessments or counseling.

### IV. Analysis

### A. Plaintiff's Separate Petition for Writ of Habeas Corpus

Before addressing the seven claims set forth in Plaintiff's tendered civil complaint, the undersigned briefly discusses a separately tendered petition for writ of habeas corpus that Plaintiff seeks to file "on behalf of my children…." (Doc. 1-6, PageID 35). Plaintiff's habeas corpus petition is improper in part because a non-attorney pro se litigant cannot represent anyone's interests other than her own. In short, Plaintiff cannot represent her minor children. "[P]arents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative." *Shepherd v. Wellman*, 313 F.3d 963, 970–71 (6th Cir. 2002); *Lawson v. Edwardsburg Pub. Sch.*, 751 F. Supp. 1257, 1258–59 (W.D. Mich. 1990) (litigant has the right to act as his or her own counsel under 28 U.S.C. § 1654 but may not represent the interests of his or her minor child without counsel).

Thus, this R&R recommends the dismissal of the petition for writ of habeas corpus filed "on behalf of" Plaintiff's minor children.

### B. Plaintiff's Civil Complaint Should be Dismissed

For the reasons that follow, the undersigned also recommends the dismissal of Plaintiff's civil complaint.

### 1. This Court Lacks Jurisdiction

For this Court to have federal question jurisdiction pursuant to 28 U.S.C. § 1331, a plaintiff must allege facts showing the cause of action involves an issue of federal law. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Here, Plaintiff's claims generally challenge the procedures, orders and decisions of the Adams County Court of Common Pleas, Juvenile Court Division.

More than a century ago, the United States Supreme Court proclaimed that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." *In re Burrus,* 136 U.S. 586 (1890).Thus, under the *Burrus* abstention doctrine, federal courts have universally declined to exercise jurisdiction in domestic relations cases in which a complaint contains only conclusory assertions that a plaintiff is entitled to relief because of alleged constitutional violations, where those assertions are "a mere pretense and the suit is actually concerned with domestic relations issues." *Danforth v. Celebrezze,* 76 Fed. App'x 615, 616 (6th Cir. 2002). In *Ankenbrandt v. Richards*, 504 U.S. 689, 704, 112 S. Ct. 2206 (1992), the Supreme Court reaffirmed that the domestic relations exception precludes federal courts from hearing cases "involving the issuance of a divorce, alimony, or child custody decree." Nearly all of Plaintiff's claims fall squarely within the domestic relations exception. *Accord Stephens v. Hayes*, 374 Fed. Appx. 620, 623 (6th Cir. 2010)

That most of Plaintiff's claims are precluded by the *Burrus* abstention doctrine is obvious from her prayer for relief. Plaintiff seeks a declaration "that the agency's misinterpretation of [drug] test results constitutes a violation of Plaintiff's rights," and for this Court to reverse all "court orders issued in the state court" against her. (Doc. 1-7,

PageID 48). She also seeks the following additional injunctive relief: (1) an "investigation into the drug screening practices of the Adams County Juvenile Court and Children's Services Agency to ensure compliance with established legal standards"; (2) "intervention to prevent the continued reporting of presumptive positive test results without proper confirmation"; (3) the "cessation of the use of rapid drug screen devices designated for forensic use only, and a requirement of the use of accurate and validated drug screening methods"; and (4) a directive "restraining Defendants from further violation of Plaintiff's rights." (Doc. 1-7, PageID 48). Last, she seeks compensatory and punitive monetary damages. (*Id*.)

Multiple reasons counsel against the assumption of federal jurisdiction for such claims. Adams County is immune from liability for monetary damages under the Eleventh Amendment, as are individual employees of Adams County to the extent they are named in their official capacities. "Under § 1983 and the Eleventh Amendment, the Juvenile Court is considered an arm of the state and cannot be subject to a § 1983 or any other suit for monetary relief." *Meyers v. Franklin Cnty. Court of Common Pleas*, 81 Fed. Appx. 49, 55, 2003 WL 22718238, at *6 (6th Cir. 2003) (quoting *Mumford v. Basinski,* 105 F.3d 264, 269 (6th Cir.1997)).

Many claims also are subject to dismissal because they are filed against individual Defendants who are absolutely immune from suit, including Judge Spencer and Magistrate Hunter. See *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Pearson v. Ray*, 386 U.S. 547 (1967); *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997). Judges retain absolute immunity even if they act maliciously or corruptly, as long as they are performing judicial acts and have jurisdiction over the subject matter giving rise to the suit against

13

them. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001).

Likewise, GAL Carrington, as an advisor to the court, occupies a position that is "squarely within the judicial process" and therefore is also entitled to absolute immunity from suit under federal law.[7] *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984) (citing *Briscoe v. LaHue*, 460 U.S. 325, 325 (1983)). A guardian ad litem also enjoys absolute immunity under Ohio law. *See Kriwinsky v. Deligianis*, No. 1:22-cv-1599, 2023 WL 4421634, at *3 (N.D. Ohio May 10, 2023); *see also*, *generally*, *Pittman v. Cuyahoga Cnty. Dept. of Children and Family Services*, 640 F.3d 716, 726 (6th Cir. 2011) (quoting *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 422-23 (6th Cir. 2001) (holding that social worker had absolute immunity including for actions taken during the underlying investigation, when that investigation was "intimately related to the judicial phase of child custody proceedings").

The Sixth Circuit has consistently applied the domestic relations exception to cases such as this one. But even if the referenced proceedings did not concern domestic relations, this Court would lack jurisdiction to review claims based solely on state court rulings. As explained by this Court in its dismissal of Plaintiff's prior case in this Court, No. 1:23-cv-747-SJD-KLL, the *Rooker-Feldman* doctrine bars direct review of state court decisions. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 148 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983).

---

[7] The position occupied by Defendant Tumbleson, an employee of the Adams County Health Department is less clear. Ms. Tumbleson may be entitled to quasi-judicial immunity for actions undertaken at the direction of the state court. But because there are myriad reasons to dismiss this lawsuit, the undersigned declines to reach this separate issue.

The *Rooker-Feldman* doctrine "is a narrow rule based on the idea that federal appellate jurisdiction over a state court decision lies exclusively with the Supreme Court, and not lower federal courts." *Durham v. Haslam*, 528 F. App'x 559, 563 (6th Cir. 2013). The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005). However, it does not "stop a district court from exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. To determine whether the *Rooker-Feldman* doctrine bars a claim, the court must first look to the source of the injury the plaintiff alleges in the federal complaint. *Cunningham v. Dep't of Children's Servs.*, 842 F. App'x 959, 963 (6th Cir. 2021). If the source of the injury claimed is the state-court judgment, *Rooker-Feldman* applies and the Court lacks jurisdiction. *Id.* The source of the injury is determined by the requested relief. *Id.* With respect to child custody cases, the Sixth Circuit has drawn a distinction between injuries stemming from a juvenile court order itself and those stemming from defendants' conduct in the preparation and issuance of that order. *Id.* at 964. Injuries stemming from the former are barred by the *Rooker-Feldman* doctrine, but those from the latter are not. *Id.*

In the Complaint, Plaintiff seeks reversal of the magistrate judge's juvenile court orders relating to custody. She also seeks compensatory and punitive damages for her alleged loss of privacy and emotional distress from when Moore executed the juvenile court order and allegedly violated her civil rights. These alleged violations occurred because, as Plaintiff alleges, Moore lied to coerce the juvenile court judge into entering an order allowing her to enter Plaintiff's home and/or gain custody of her children. The source of the injury, therefore, is the juvenile court order, and the requested relief flows from that order. Thus, the Court agrees with the Magistrate Judge's conclusion that the *Rooker-Feldman* doctrine would bar the Court's subject matter jurisdiction over the claim seeking reversal of the juvenile court magistrate judge's order temporarily removing plaintiff's children from her custody.

*Chappel*, 2023 WL 4191724, *3-4 (internal footnote omitted).

In a Supplemental R&R, Magistrate Judge Litkovitz reasoned that *Rooker-Feldman* might not apply to the proposed amended complaint because Plaintiff had dropped her request for reversal of the Juvenile Court's orders in the tendered amended complaint.[8] Judge Dlott disagreed with that portion of the Supplemental R&R. Acknowledging a split in the case law discussed by Magistrate Judge Litkovitz, the Court found more persuasive the reasoning of cases that have applied *Rooker-Feldman* to similar facts. *See Chappel*, 2023 WL 4191724 at *7 (citing *Hall v. Bush*, No. 1:20-cv-731, 2021 WL 4239855, at *6 (W.D. Mich. July 21, 2021), *report and recommendation adopted*, 2021 WL 3750164 (W.D. Mich. Aug. 25, 2021)).

On the other hand, Judge Dlott agreed with Magistrate Judge Litkovitz that the *Younger* abstention doctrine also barred Plaintiff's claims. Plaintiff's new complaint makes clear that the Adams County Juvenile Court proceedings remain ongoing. Therefore, the undersigned incorporates the Court's prior analysis concerning *Younger* abstention as fully applicable to all remaining claims in this lawsuit:

> The abstention doctrine articulated in *Younger v. Harris,* 401 U.S. 37 (1971)… continues to present a jurisdictional bar to most of plaintiff's claims in her proposed amended complaint. Absent extraordinary circumstances, federal courts may not interfere with pending state proceedings in order to entertain constitutional challenges to the state proceedings. *Id.* Under *Younger*, the federal court must abstain where "[1] state proceedings are pending; [2] the state proceedings involve an important state interest; and

---

[8]Under *Rooker-Feldman*, federal jurisdiction may still attach where a litigant presents an *independent* claim that challenges the constitutionality of a state official's action. In the previously dismissed case, the Court pointed out that Plaintiff had failed to state any independent claim, in part because she failed to properly sue the Adams County Board of Commissioners. The Court reasoned that even if she had named the Board as a defendant, her "claim would fail because she did not allege that a specific policy, custom, or decision of the Adams County Board of Commissioners caused her alleged constitutional injury as required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978)." *Chappel*, 2023 WL 4191724, at *4 (S.D. Ohio May 19, 2023). In her new complaint, Plaintiff does name the Adams County Board of Commissioners as well as an individual who supervised the drug screening tests, Adams County Peer Supervision Specialist Tumbleson.  But even if the new claim is liberally construed as alleging that the Board's implementation of its drug screening policies caused Plaintiff's injuries, Plaintiff's claims against the Board and Ms. Tumbleson still would be barred by *Younger* abstention.

[3] the state proceeding will afford the plaintiff an adequate opportunity to raise his constitutional claims." *Kelm v. Hyatt,* 44 F.3d 415, 419 (6th Cir. 1995) (citing *Nilsson v. Ruppert, Bronson & Chicarelli Co.,* 888 F.2d 452, 454 (6th Cir. 1989)). *See also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603-05 (1975). Extraordinary circumstances barring abstention include "great and immediate" irreparable injury, state law that is "flagrantly and patently violative of express constitutional prohibitions," or "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Younger,* 401 U.S. at 46, 53, 54. *See Fieger v. Thomas*, 74 F.3d 740, 750 (6th Cir. 1996).

All three factors supporting *Younger* abstention are present in this case. First, it appears the dependency case is currently pending in the Adams County juvenile court.... *See Huffman*, 420 U.S. at 608; *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003); *Foster v. Kassulke*, 898 F.2d 1144, 1146 (6th Cir. 1990). Second, the dependency case implicates the important state interests in child custody and parental rights. *See Meyers v. Franklin Cnty. Ct. Com. Pl.*, 23 F. App'x 201, 204 (6th Cir. 2001) (*Younger* abstention case stating that "cases out of the Supreme Court and this Court make it clear that abstention is generally appropriate in matters of family relations such as child custody"). *See also Younger*, 401 U.S. at 43-45. Third, there is no allegation that the state juvenile court proceedings cannot provide an opportunity for plaintiff to raise any constitutional claims in connection with the dependency proceedings. *See Furr-Barry v. Underwood*, 59 F. App'x 796, 797 (6th Cir. 2003) (affirming the application of *Younger* where a case was pending in a Tennessee juvenile court, because "there was no evidence that the state court proceedings did not provide an opportunity for [the plaintiff] to raise her constitutional claims[ ]"). Therefore, abstention under *Younger* is appropriate.

Nor has plaintiff alleged facts showing the existence of extraordinary circumstances barring the application of *Younger* abstention. ...[She] does not explain why plaintiff could not raise her proposed constitutional claims in the Adams County juvenile court. For the reasons stated above, the Court concludes that adherence to the *Younger* abstention doctrine is required in this case as to plaintiff's First, Fourth, and Fourteenth Amendment claims and 42 U.S.C. § 1985 conspiracy claim related to the Adams County juvenile court proceedings.

*Chappel*, 2023 WL 2568300, at *4-5 (S.D. Ohio March 20, 2023) (R&R), adopted at

*Chappel*, 2023 WL 4191724, at *4, n.8 and at *7 n.12. In short, *Younger* abstention

provides another firm jurisdictional bar to the claims presented in Plaintiff's new complaint.

*See also generally Kelm v. Hyatt*, 44 F.3d at 419-421.

### 2. Plaintiff's Failure to State a Claim Against Public Defenders

In addition to the jurisdictional issues and the absolute judicial immunity enjoyed by the state court judicial officers and the guardian ad litem, Plaintiff's claims against her two public defenders are subject to summary dismissal under 42 U.S.C. § 1983 for failure to state a claim. "It is firmly established that a defense attorney, regardless of whether he is a public defender or private attorney, is not a state actor for purposes of § 1983." *Jordan v. Kentucky,* No. 3: 09 CV 424, 2009 WL 2163113, at *4 (6th Cir. July 16, 2009), citing *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445 (1981). In other words, Plaintiff cannot state a §1983 claim against either of the public defenders who previously represented her.

### 3. The Preclusive Effect of this Court's Prior Judgment

As stated, the above-captioned case arises out of the same set of operative facts as presented in Plaintiff's prior case. Plaintiff's new allegations mirror many of her prior allegations. For example, Plaintiff previously complained that drug tests showed a "false positive" and were inaccurate because they were for "forensic use only," were "not approved by the FDA," and used cut-off levels that differ from those used by the Department of Health and Human Services. (*See* No. 1:22-cv-747, Doc. 1 (complaint) at ¶¶20-21, 23-26, 28-31, PageID 4-5). Plaintiff also complained about being forced to subject herself to drug screen tests at the location dictated by the Agency based on a lack of "trust" in its ability to administer accurate tests. (*Id*. at ¶34, PageID 6). Plaintiff previously presented due process claims relating to the alleged coercive process by which her children were first removed and a "conspiracy" claim; both claims were rejected.

*See Chappel*, 2023 WL 4191724, at *7-8; *see also id.*, 2023 WL 2568300, at *6 (R&R). But other allegations and claims appear to be new, as is the list of target Defendants.

Still, the similarity of allegations in Plaintiff's prior complaint - a pleading that was dismissed by this Court with prejudice under 28 U.S.C. § 1915(e) - raises questions about claim preclusion, or *res judicata*. "The Sixth Circuit has stated that the doctrine of *res judicata* may be raised by the district court, *sua sponte,* 'in the interest[ ] of ... the promotion of judicial economy.'" *Daniel v. McQuiggin,* No. 2:08-CV-13293, 2009 WL 960296, at *2 (E.D. Mich. Apr. 7, 2009) (quoting *Holloway Constr. Co. v. United States Dep't of Labor,* 891 F.2d 1211, 1212 (6th Cir. 1989)). Because this Court is on notice of its own prior rulings, it is appropriate to raise the issue *sua sponte* here. The fact that Plaintiff has appealed this Court's ruling presents no bar to the finality of this Court's prior judgment. "[I]t is well established that a final trial court judgment operates as *res judicata* while an appeal is pending." *Commodities Export Co. v. U.S. Customs Service*, 957 F.2d 223, 228 (6th Cir.1992).

Claim preclusion bars Plaintiff's "new and improved" claims here because she could have included the same claims in her previous case.

> Just as the addition of new claims does not prevent dismissal on res judicata grounds, the addition of "new and improved" target Defendants does not preclude summary dismissal. Claim preclusion remains appropriate if a plaintiff could have named a party in the prior lawsuit but did not. *See Southall v. Holland*, 2021 WL 396688 at *6 (M.D. Tenn. Feb. 3, 2021); *see also generally, Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992) (per curiam) (upholding dismissal of successive complaint against new defendants, collecting cases and citing generally *United States v. Mendoza*, 464 U.S. 154, 158-59 (1984); *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 331(1979)); *see also Heritage Hills Fellowship v. Plouff*, 555 F. Supp. 1290, 1295-96 (E.D. Mich. 1983). In *Gregart*, the Sixth Circuit also cited with approval *Hazzard v. Weinberger*, 382 F. Supp. 225, 226-229 (S.D.N.Y. 1974), *aff'd*, 519 F.2d 1397 (2d Cir. 1975), in which the court held that nonmutual claim preclusion is appropriate when a pro se litigant brings

repeated actions upon the same operative facts with slight changes in legal theories and "cast of characters-defendants."

*Bardes v. Bush*, No. 1:22-cv-290, 2022 WL 7121518, at *6 (S.D. Ohio, Oct. 12, 2022). Thus, claim preclusion provides one more reason to dismiss this lawsuit with prejudice under 28 U.S.C. § 1915(e)(2)(B).

### V. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** Plaintiff's new civil complaint be **DISMISSED with prejudice** under 28 U.S.C. § 1915(e)(2)(B), and that her tendered petition for writ of habeas corpus be dismissed based on Plaintiff's inability to represent her children as a pro se litigant.

  *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAWN M. CHAPPEL,                                              Case No. 1:23-cv-728

           Plaintiff,                                    Cole, J.
                                                             Bowman, M.J.
    v.

MAGISTRATE DAVID M. HUNTER, et al.,

           Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).