UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAWN M. CHAPPEL,

    Plaintiff,

  v.

DAVID M. HUNTER, *et al.*,

    Defendants.

Case No. 1:23-cv-728

JUDGE DOUGLAS R. COLE
Magistrate Judge Bowman

## OPINION AND ORDER

Before the Court is Magistrate Judge Bowman's December 7, 2023, Report and Recommendation (R&R, Doc. 7), which recommends that the Court dismiss Plaintiff Dawn M. Chappel's tendered Petition for Writ of Habeas Corpus (Doc. 3) and dismiss with prejudice the Complaint (Doc. 5) Chappel filed here. As explained below, the Court **ADOPTS IN PART, MODIFIES IN PART, AND REJECTS IN PART** the R&R (Doc. 7). That is to say, the Court agrees with the R&R's ultimate recommendation that it dismiss the action, but with the caveat that the dismissal will be without prejudice. The Court therefore **OVERRULES** Chappel's Objections (Doc. 8) and **DISMISSES** Chappel's Complaint (Doc. 5) **WITHOUT PREJUDICE**. And because the case is dismissed, the Court **DENIES AS MOOT** Chappel's Petition for Writ of Habeas Corpus (Doc. 3) and **DENIES AS MOOT** her Notice to Vacate Void Orders (Doc. 6).

## BACKGROUND[1]

Chappel's Complaint, while detailed, is not always easy to parse. When construed liberally, it makes clear that this is a recent iteration of Chappel's attempt to litigate issues arising from proceedings in a state juvenile court involving a state agency's custody of Chappel's children. (Doc. 5 ¶¶ 1–8, #278–79). Her previous suit in this Court, which raised claims against Adams County Children's Services and one of its caseworkers, was dismissed at the screening stage because it was barred by the *Rooker-Feldman* doctrine as an impermissible attempt to appeal the state juvenile court's determinations and otherwise failed to state a claim for relief. *Chappel v. Adams Cnty. Child.'s Servs.*, No., 2023 WL 4191724, at *3–*5, *7–*8 (S.D. Ohio May 19, 2023). In the current suit, Chappel sued different defendants and raised several claims not adjudicated in the first suit—although many allegations still appear to be directed at the validity of the state court proceedings. The current defendants include two state court judges involved with the custody dispute, two public defenders who had represented Chappel in those proceedings, the juvenile court's guardian ad litem, the Adams County Board of County Commissioners, and an official with the Adams County Health Department. (Doc. 5 ¶¶ 2–8, #277–78). Six of her seven claims allege violations of her procedural due process rights: claims premised on (1) the alleged

---

[1] The case comes before the Court on its sua sponte screening authority under the Prison Litigation Reform Act, 28 U.S.C. § 1915(e), which is governed by the same standards that apply to motions to dismiss for failure to state a claim. *Williams v. Parikh*, No. 1:23-cv-167, 2023 WL 8824845, at *3 (S.D. Ohio Dec. 21, 2023). So while the Court must accept the well-pleaded allegations in the Complaint as true, *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008), it "may take judicial notice of proceedings in other courts of record." *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969).

tampering with court documents, (*id.* at #279–82), (2) the state court's claimed lack of jurisdiction, (*id.* at #282–83), (3) her alleged inability to present evidence through counsel, (*id.* at #283–84), (4) allegedly faulty procedures used during her court-ordered drug tests, (*id.* at #284–85), (5) bias in the state court proceedings, (*id.* at #285–86 (referencing also the Equal Protection Clause)), and (6) the alleged use of unlicensed individuals to administer drug screening and drug counseling programs, (*id.* at #287). Her seventh claim purports to raise a substantive due process right on behalf of the minors in the state agency's custody for the guardian ad litem's failure to safeguard their welfare.[2] (*Id.* at #286–87). For these violations, Chappel demands a smorgasbord of relief: an expansive order halting the state court's use of its current drug-screening protocol and requiring an investigation into the practices, declaratory and injunctive relief for the purported constitutional violations, compensatory and punitive damages, and this Court's reversal of the state court orders. (*Id.* at #288).

When filing the Complaint, Chappel also moved for leave to proceed in forma pauperis (IFP).[3] (Doc. 1). As a result, under this Court's General Order Cin. 22-02, the matter was referred to a Magistrate Judge. On December 7, 2023, the Magistrate Judge granted Chappel IFP status. (Doc. 4). That same day, invoking the Court's

---

[2] Other than Count 1 of the Complaint, which expressly alleges that the defendants have violated 42 U.S.C. § 1985, (Doc. 5, #280), the Court construes the six other due process claims as having been brought under 42 U.S.C. § 1983, as that is the only mechanism by which state actors can be sued for constitutional violations. *Williams*, 2023 WL 8824845, at *1 n.1.

[3] Chappel's IFP motion also included several other miscellaneous motions as attachments. (*See* Docs. 1-1, 1-2). The Magistrate Judge denied the non-dispositive motion as moot in the R&R. (Doc. 7, #520 n.1). Chappel has not objected to those rulings under Federal Rule of Civil Procedure 72(a). (*See* Doc. 8). So the Court does not disturb these rulings, especially considering it agrees with the Magistrate Judge that dismissal of the action is warranted.

3

authority under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(e), to conduct a sua sponte review of the Complaint, the Magistrate Judge issued her R&R recommending dismissal of the Complaint for lack of subject-matter jurisdiction as well as a failure to state a claim for relief. (Doc. 7, #531–39). And in the R&R, the Magistrate Judge also recommended that the Court deny Chappel's separately filed Petition for a Writ of Habeas Corpus on the grounds that Chappel could not represent the interests of her children. (*Id.* at #530). The Magistrate Judge made no recommendation regarding Chappel's self-styled "Notice to Vacate Void Orders," which is best construed as a motion for judgment on the pleadings considering Chappel argues in the document that she merits relief from the state juvenile court orders based solely on the allegations in her Complaint. (*See* Doc. 6).

Chappel objected to the R&R. (Doc. 8). Chappel (1) generally argues the merits of her Complaint, (*id.* at #541–55; (2) appears to abandon several forms of requested relief, including her demand for a declaration that Defendants violated her constitutional rights, an injunction "restraining Defendants from further violation of Plaintiff's rights," compensatory and punitive damages, and a "[r]eversal of the court orders issued in the state court," (*id.* at #555); and (3) objects to the R&R insofar as it found that the suit must be dismissed because of claim preclusion or for want of subject-matter jurisdiction under the Eleventh Amendment, the *Burrus* doctrine, and *Rooker-Feldman*, (*id.* at #555–58). Along with objecting, Chappel filed 20 more pages of exhibits. (*id.* at #560–80).

Accordingly, the R&R and Chappel's objections are ripe for the Court's review.

4

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), "district courts review an R&R de novo after a party files a timely objection." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that review extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (quoting Fed. R. Civ. P. 72(b)(3)) (cleaned up). By contrast, if a party makes only a general objection, it "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A litigant must identify each issue in the R&R to which he objects with sufficient clarity, or else forfeit the Court's de novo review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the [] court to discern those issues that are dispositive and contentious.").

That said, Chappel is proceeding pro se. A pro se litigant's pleadings are to be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules governing civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). For unobjected portions of the R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that

5

the Court still must 'satisfy itself that there is no clear error on the face of the [R&R] … to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

The Court is reviewing the Complaint under its screening authority under 28 U.S.C. § 1915(e)(2)(B), which permits sua sponte dismissals for failure to state a claim upon which relief may be granted. Sua sponte dismissals under these provisions are governed by the same standards that apply to motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Under that standard, a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making that determination, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up).

## LAW AND ANALYSIS

Before diving into the merits, the Court needs to lay some groundwork. As noted above, Chappel's nominally labeled objections do not require full consideration. This is because her decision to argue about the merits of her claims without specific reference to aspects of the R&R she believes are in error, (Doc. 8, #541–55), constitutes only a general objection that results in a forfeiture of the Court's de novo review. *Miller*, 50 F.3d at 380; *Jennifer R. V. v. Comm'r of Soc. Sec.*, No. 1:19-cv-114, 2023 WL 6583815, at *5 (S.D. Ohio Oct. 10, 2023). Chappel also backtracks on the

6

relief she requested by abandoning all but her request for declaratory and equitable relief resulting in the state court's termination of its drug testing procedures. (Doc. 8, #555 ("The plaintiff seeks to correct the complaint, removing accidentally included relief requests (6–10)."); *see* Doc. 5, #288 (listing relief related only to the state court's drug procedures in paragraphs 1–5)). The Court accepts Chappel's express disavowal of such relief and proceeds accordingly by treating the drug-testing-related forms of relief, (*id.*), as the only remedies Chappel demands for her claims. *Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, No. 1:21-cv-29, 2021 WL 5194662, at *3 (S.D. Ohio Nov. 8, 2021) ("[Chappel] is the master of [her] Complaint, and [she] has elected not to seek [certain forms of] recovery ... . That is [her] right."); *see generally McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019) ("The plaintiff is the master of the complaint and free to choose between legal theories." (cleaned up)).

With that clarification out of the way, the question is how to proceed. The R&R lumps all the claims together because the Magistrate Judge concluded that the judicial doctrines discussed in the R&R applied equally to all seven claims raised in the Complaint. (*See* Doc. 7, #531–36, 537–39). The Court is less certain. So it opts instead for a cautious approach and groups claims only to the degree that they can be disposed of via the same doctrine. For each, the Court will note whether Chappel objected to that position. Finally, as is its charge at all stages of the litigation, the Court starts with subject-matter jurisdiction issues first. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998). That said, it may take questions of subject-

matter jurisdiction in any "order it pleases." *Dates v. HSBC*, No. 1:24-cv-81, 2024 WL 860918, at *5 (S.D. Ohio Feb. 29, 2024).

## A.     Lack of Redressability for Counts 1, 2, 3, and 5

The first doctrinal problem barring this Court's jurisdiction over several claims in the Complaint is Chappel's lack of Article III standing to pursue those claims. To invoke this Court's authority to dispense remedies for legal claims, Chappel must "answer the question: 'What's it to you?'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U.L. Rev. 881, 882 (1983)). And "[t]o answer that question in a way … [that] establish[es] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.*

This third component is where Chappel struggles. Redressability is an essential prerequisite for a party's invocation of a federal court's subject-matter jurisdiction because such jurisdiction hinges on the ability to "provide[] a remedy that can redress the plaintiff's injury." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 801 (2021). It is not enough for the plaintiff to obtain psychic relief by forcing a defendant to explain the legality of its actions if the "relief [requested] does not remedy the injury suffered." *Steel Co.*, 523 U.S. at 107. In other words, ameliorating the asserted legal injury "is the very essence of the redressability requirement." *Id.* Applying that

8

rule to the still-live requested forms of relief shows why Chappel lacks standing to pursue Counts 1, 2, 3, and 5 of her Complaint.

Count 1 in the Complaint appears to raise a civil rights conspiracy claim brought under 28 U.S.C. § 1985 for the state court's alleged tampering with its own documents, all purportedly to deprive Chappel of her due process rights. (Doc. 5 ¶¶ 10–30, #279–82). Count 2 attempts to challenge the constitutional legitimacy of the state juvenile court's orders because they were issued "without proper jurisdiction." (*Id.* ¶¶ 32–35, #282–83). Count 3 challenges the validity of the state-court legal proceedings based on claims that the two attorneys that represented her were ineffective and that Chappel was purportedly barred from presenting probative evidence before the juvenile court (although what evidence Chappel wanted presented is not identified with any specificity or particularity). (*Id.* ¶¶ 37–44, #283–84). And Count 5 claims that the state court proceedings are biased and therefore must be invalidated because the cast of characters involved hold "a prejudiced attitude towards individuals with addiction issues, which could have affected their ability to fairly adjudicate" the custody case. (*Id.* ¶¶ 56–61, #285–86). These four claims all contend that the state court proceedings are tainted by alleged due process violations and therefore cannot carry the force of law: the legal injury stems from the continued enforcement of the court's orders in those cases. So, to have standing, Chappel would need to demand a remedy that permits her to recover for the alleged harm caused by the state court's orders.

9

But as a reminder, as a result of Chappel's abandonment of certain forms of relief in her objections, the only remedies she still requests are various forms of declaratory and injunctive relief related to the state juvenile court's drug testing procedures. (*Id.* at #288; Doc. 8, #555). That presents a redressability/standing problem, as federal court orders directed at the juvenile court's drug testing procedures would do nothing to remedy or to stem the harm arising from the legal injury she identifies in each of these counts. Even were the Court to conclude that it could offer all the relief Chappel desires from the drug testing (to be clear, the Court does not so conclude, *see infra* Part C), such relief would not disturb the ongoing effect or the state court's orders nor compensate Chappel for any rights violations she purportedly experienced. What that means is Chappel's prosecution of Counts 1, 2, 3, and 5 of the Complaint purportedly "seeks not remediation of her own injury … but vindication of the rule of law—the undifferentiated public interest in faithful" compliance with due process. *Steel Co.*, 523 U.S. at 106. That does not suffice to vest this Court with jurisdiction over those claims.

So, while these allegations, and Chappel's further broad assertions about the state court's alleged nefarious handling of other child custody cases, certainly raise some concerns (if true), they suffer from a fatal redressability flaw that bars this Court's jurisdiction over these claims. Accordingly, the Court will dismiss them without prejudice.

## B. Count 6 – Substantive Due Process Claim

Chappel's sixth claim challenges the actions of the guardian ad litem as purportedly in violation of her and her children's rights. (Doc. 5 ¶¶ 63–68, #286–87).

First, as Chappel acknowledges in several filings with this Court, (*id.* ¶ 63, #286; Doc. 3, #274; Doc. 8, #547), her children are not currently in her custody, *Chappel*, 2023 WL 4191724, at *1, which suggests that this claim seeks to raise the rights of third parties she no longer represents. (Doc. 5 ¶ 67, #286 (claiming the guardian ad litem breached his duty by failing to account for "the children's wishes")). But the Supreme Court has cautioned against federal courts' exercising jurisdiction over this exact scenario as a prudential matter: the state's temporary custody determination, a quintessential family-law matter reserved for its sole consideration, "has deprived [Chappel] of that [next friend] status" necessary for her to assert her children's rights. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 16–18 (2004), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). In such a case, "it is improper for th[is] federal court[] to entertain a claim by [Chappel, given her] … standing to sue is founded on family law rights that are in dispute [which, in turn, raises the specter that] prosecution of th[is] lawsuit may have an adverse effect on [her] [children] who [are] the source of [her] … claimed standing." *Id.* at 17. So, to the extent Chappel seeks to assert substantive due process claims held by her children, who are not in her custody, this claim must be dismissed for want of prudential standing.

Second, in as much as Chappel challenges a denial of her own substantive due process rights by challenging the legitimacy of the actions the guardian ad litem has

11

taken in the state court proceedings, (Doc. 5 ¶ 68, #287 (alleging harm to Chappel's "right to family life")), the Court still lacks jurisdiction over the claim for the reasons articulated above, *see supra* Part A. Namely, Chappel objects to the guardian ad litem's actions because they have injured her filial rights by the guardian's advocating for the continued separation between her and her children. (Doc. 5 ¶¶ 66, 68, #286–87). But to remedy that injury, Chappel would need either to be compensated for the alleged harm or to have her children returned to her. And as noted above, Chappel no longer requests such relief—she had disavowed any relief save for relief directed at terminating the state court's continued use of its current drug testing procedures. (*Id.* at #288; Doc. 8, #555). But again, as before, this Court's granting of relief related to the drug testing procedures would not provide relief from the asserted injury identified in this claim. And so, the claim, to the extent that it is Chappel's assertion of her own rights, must fail on redressability grounds as well. So the Court will dismiss it without prejudice on account of Chappel's lack of standing.

C. **Counts 4, 7 – Eleventh Amendment and *Younger* Abstention**

The final two counts in the Complaint raise challenges directly implicating the juvenile court's employment of allegedly improper drug testing procedures under state law. Count 4 claims that the ongoing state custody proceedings relied on faulty drug screening procedures because the testing devices do not properly comply with state law and because the court documents incorporate "false[] reports" of tests' being conducted as well as "false[] reports" of test results. (Doc. 5 ¶¶ 46–53, #284–85). And Count 7 objects to Defendant Shayla Tumbleson's administration of the court-ordered

12

drug tests on Chappel because Tumbleson purportedly lacks a proper license, which allegedly violates state law. (*Id.* ¶¶ 69–76, #287). Count 4 appears to be directed against defendant state court judges and defendant Adams County Board of County Commissioners, and Count 7 appears to be directed against those same defendants in addition to Tumbleson.[4] Admittedly, both counts directly implicate the validity of the state court's reliance on drug testing procedures, so there are no redressability problems as a result of Chappel's preservation of the drug-testing-related forms of relief after her objections. (*Id.* at #288; Doc. 8, #555). But while there are no standing problems, the Court still cannot reach the merits of either claim. For starters, because certain defendants are sued in their official capacities there is a jurisdictional problem under the Eleventh Amendment. Moreover, because the allegations as explained above all contest the drug testing used by the state juvenile court *in connection with* the ongoing custody proceedings regarding Chappel's children, (Doc. 5 ¶¶ 49–50, 52–53, #284–85 (citing a "November 1, 2024 hearing" in her children's custody case and "plaintiff's case documents" as evidencing the impropriety of the state court's drug testing procedures and its "illegally constructing evidence to support allegations against parents")), there is an abstention problem barring this Court's review. Each are addressed in turn.

---

[4] Based on the allegations listed in the Complaint, the Court can only surmise who are the proper defendants for these claims. Chappel neither identifies who she believes allegedly violated her rights nor makes out any coherent claim for relief based on the allegations included. As is the Court's responsibility, however, with pro se plaintiffs, the Court construes the Complaint as liberally as possible to reach this conclusion.

13

### 1. Eleventh Amendment

Chappel's claims, to the extent that they are raised against the state court judges (Judge Spencer and Magistrate Judge Hunter) in their official capacities, must be dismissed for want of subject matter jurisdiction. As caselaw has established, the courts of common pleas, the state juvenile courts, and their employees are state officers for § 1983 purposes. *Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325, 333–34 (6th Cir. 2022); *Williams v. Parikh*, No. 1:23-cv-167, 2023 WL 8824845, at *3 (S.D. Ohio Dec. 21, 2023). So that means the official-capacity claims against the state court judges are the equivalent of suits against Ohio, which is clothed with Eleventh Amendment immunity from suit. *Williams*, 2023 WL 8824845, at *5. And while Chappel is correct that *Ex parte Young* authorizes federal courts to entertain suits for prospective equitable relief against state officials in their official capacities generally, (Doc. 8, #555), that exception does not apply to equitable relief "directed toward state *judicial* officers regarding their adjudication of the cases and controversies put before them." *Williams*, 2023 WL 8824845, at *6. Namely, Chappel's official-capacity claims against the state court judges are barred by sovereign immunity as all the prospective declaratory and equitable relief demanded would interfere with the ongoing custody suit and drug testing attendant to those proceedings. (Doc. 5, #288). So these claims must be dismissed without prejudice on

14

jurisdictional grounds as they are barred by the state's Eleventh Amendment immunity.[5] *Williams*, 2023 WL 8824845, at *6–*7.

### 2. *Younger* Abstention

What about the remaining claims contained in counts 4 and 7 of the Complaint (i.e., those individual-capacity claims brought against the judges and the same claims raised against Adams County Board of County Commissioners and Tumbleson in both her official and individual capacities)? The Court concludes it cannot resolve these claims because of the *Younger* abstention doctrine.

Under *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, a federal court generally must abstain from adjudicating a federal cause of action when doing so would interfere with an ongoing child custody proceeding. *Meyers v. Franklin Cnty. Ct. Common Pleas*, 23 F. App'x 201, 204 (6th Cir. 2001). To satisfy the three prerequisites of *Younger*, there must be a pending state court proceeding that

---

[5] This analysis does not apply to either the Adams County Board of County Commissioners or Tumbleson when sued in her official capacity because both parties are arms of the local government. *See generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 688–90 (1978) (holding that "municipalities and other local government units" may be sued under § 1983). The Adams County Board of County Commissioners is the proper local body politic under Ohio law that may be sued under § 1983, *Lovelo v. Clermont Cnty. Sheriff's Off.*, No. 1:23-cv-114, 2023 WL 8828008, at *2 (S.D. Ohio Dec. 21, 2023), and it cannot claim entitlement to the state's Eleventh Amendment immunity, *S.J. v. Hamilton Cnty.*, 374 F.3d 416, 420 (6th Cir. 2004). Tumbleson is alleged to be an employee of the Adams County Health Department, (Doc. 5 ¶ 8, #278), which department is funded and managed by the Adams County Board of County Commissioners under state law. Ohio Rev. Code §§ 3709.03, .31. And given Ohio state courts treat the county health departments as arms of the county, *Trubiani v. Graziani*, No. 2874-M, 2000 WL 14043, at *3–*4 (Ohio Ct. App. Dec. 29, 1999) (granting political subdivision immunity to the county health department); *see generally Stewart v. Allen*, 2008-Ohio-1645 (9th Dist.) (equating the county with the county health department throughout the opinion), it is clear that the health department is properly considered an arm of the local rather than state government. *Cf. Lowe v. Hamilton Cnty. Dep't of Job & Family Servs.*, 610 F.3d 321, 325–32 (6th Cir. 2010). So, when Tumbleson is sued in her official capacity, she cannot claim any entitlement to the state's immunity from suit.

implicates important state interests and that "afford[s] the plaintiff an adequate opportunity to raise constitutional claims." *Id.* As the Court has explained, Chappel's allegations in Counts 4 and 7, as bolstered by the drug-testing related relief she requests, make clear that she challenges the state court's ongoing proceedings and its continuing reliance on the current drug testing procedures and the results from the tests purportedly administered to Chappel. (Doc. 5, #284–85, 287–88). By seeking an invalidation of the current procedures and a determination that the past drug tests cannot be used against her in the current custody proceedings, Chappel's drug-testing due process claims constitutes an implicit request that this Court intermeddle in the ongoing state court proceedings.[6] But such interference runs headlong into *Younger*. After all, child custody matters, like other domestic matters, are inherently and exclusively vested in state courts. *Cf. Ex parte Burrus*, 136 U.S. 586, 593–94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States. As to the right to the control and possession of this child, as it is contested by its father and its grandfather, it is one in regard to which neither the congress of the United States, nor any authority of the United States, has any special jurisdiction."). And as caselaw makes clear, the juvenile court provides an adequate forum for Chappel to

---

[6] The Court agrees with the Magistrate Judge that the Complaint is best construed as alleging "that the Adams County Juvenile Court proceedings remain ongoing." (Doc. 7, #535).

16

raise her constitutional due process challenges to those proceedings.[7] *Meyers*, 23 F. App'x at 205 & n.3.

So because Chappel did not object to the R&R's invocation of the *Younger* abstention doctrine, (Doc. 7, #535–36), nor identify extraordinary circumstances requiring federal intervention, *Younger* applies. The Court will therefore abstain from adjudicating these two remaining claims and dismiss them without prejudice.[8] *Meyers*, 23 F. App'x at 204–06.

\* \* \*

Altogether, the Court finds that all of the claims must be dismissed for one reason or another.[9] That leaves the question of what to do about Chappel's other

---

[7] Although Chappel argues that the state court proceedings were unfair on account of her speculation about the state court's supposed tampering with evidence and her disagreement with the court's sustaining objections to legal arguments she made about state law, (*e.g.*, Doc. 5 ¶¶ 13, 49, #280, 284–85), this contention does not meet her burden of showing that the state proceeding would not permit her to raise her constitutional claims. First, Chappel's allegations smack of speculation and are not grounded in competent evidence. Second, these arguments imply that Chappel merely disagrees with the legal conclusions reached in the state court proceedings, rather than contests the adequacy of the forum. This is bolstered by the fact that under Ohio law, juvenile courts are given broad jurisdiction to hear claims to assure parties have fair and constitutionally compliant hearings. Ohio Rev. Code § 2151.01; *Meyers*, 23 F. App'x at 205 n.3. Finally, to the extent that Chappel finds that some of the procedures are improper and contends that her legal arguments should not have been ignored, "the proper avenue for registering that disagreement is by way of an appeal" in the state court system. *Dates*, 2024 WL 860918, at *9.

[8] *Younger* abstention would not require dismissal of these claims were Chappel to have requested damages. *Meyers*, 23 F. App'x at 206 (noting that damages claims currently barred by *Younger* should be held in abeyance pending the resolution of the state court proceeding). But Chappel has expressly disavowed her demand to recover damages in her objection, as noted above. (Doc. 8, #555 (removing requested relief number 8, which prays for compensatory and punitive damages, (Doc. 5, #288))). So *Younger* requires a dismissal of the entirety of both claims without prejudice.

[9] Because the explanations above suffice to dismiss the Complaint, the Court need not address the R&R's alternative reasons for dismissing this action. That said, the Court notes its disagreement with the R&R's claim preclusion analysis. (Doc. 7, #537–39). A suit is not

pending requests for relief: her effort to obtain a writ of habeas corpus to compel Adams County Children's Services to present her children to the federal court, (Doc. 3, #274), and her motion to have this Court vacate the state court's orders, which Chappel believes are void, (Doc. 6, #513). Although the R&R recommended dismissing the petition for a writ of habeas corpus based on the petition's merits, (Doc. 7, #530)—a recommendation to which Chappel did not object—the Court finds that denying the petition as moot is the more prudent route given it has already dismissed the entire action and considering the jurisdictional issues that prevent the Court from exercising its authority over many of the claims in the Complaint. For exactly the same reasons, the Court will also deny Chappel's motion for judgment on the pleadings, nominally styled as a "Notice to Vacate Void Orders," as moot.

Finally, because Chappel is proceeding IFP, the Court must assess, under 28 U.S.C. § 1915(a)(3), whether an appeal taken from this Order would be "in good faith." Considering the Complaint suffers from clear jurisdictional issues and abstention issues that jump out from the face of the Complaint, as detailed above, "any appeal of this decision would not have an arguable basis either in law or in fact." *Johnson v.*

---

barred by the doctrine of res judicata if the previous suit raising identical claims was dismissed for a want of subject-matter jurisdiction. *Hughes v. United States*, 71 U.S. (4 Wall.) 232, 237 (1866). And as the thrust of the prior court's decision was to dismiss Chappel's claims as outside the scope of the court's subject-matter jurisdiction under the *Rooker-Feldman* doctrine, *Chappel*, 2023 WL 4191724, at *3–*4, the judgment in that case does not operate as a bar to the adjudication of this current dispute. Nor is the Court convinced that non-mutual claim preclusion is a viable theory of law as the R&R proclaims. (Doc. 7, #538–39). This is particularly so given the well-reasoned analysis in *The 81 Development Company, LLC v. Soil & Materials Engineers, Inc.*, No. 1:19-cv-998, 2021 WL 868886, at *11–*15 (W.D. Mich. Mar. 9, 2021), which rejected a litigant's attempt to loosen the privity requirement required for claim preclusion to attach, and the Supreme Court's strict delineation in *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008), of the six recognized categories of privity for which non-party claim preclusion is permissible.

*DeWine*, No. 22-cv-587, 2023 WL 6421286, at *3 (S.D. Ohio Oct. 3, 2023) (cleaned up). So the Court certifies that any such appeal would not be in good faith.

## CONCLUSION

In accordance with its explanation above, the Court **ADOPTS IN PART, MODIFIES IN PART, AND REJECTS IN PART** the R&R (Doc. 7)—the Court agrees with its ultimate recommendation of dismissal (though the Court concludes dismissal of this action should be without prejudice), (*id.* at #539). Accordingly, the Court **OVERRULES** Chappel's objections (Doc. 8) and **DISMISSES t**he action **WITHOUT PREJUDICE**. Because the case is dismissed, the Court **DENIES AS MOOT** Chappel's Petition for Writ of Habeas Corpus (Doc. 3) and her Notice to Vacate Void Orders (Doc. 6). Finally, the Court **CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal of this Opinion and Order would not be made in good faith and **DENIES** Chappel leave to appeal in forma pauperis.

The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

March 27, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**